*62 MR. JUSTICE WEBER
delivered the Opinion of the Court.
In this case, all parties appeal portions of an order of the District Court for Lewis & Clark County which held that claims on some of the Passages’ accounts with defendants were subject to valid arbitration clauses. We affirm in part and reverse in part.
The issues are:
1. Did the District Court correctly determine that it had jurisdiction to order arbitration of the Passages’ claims under the Federal Arbitration Act?
2. Are the arbitration agreements in this case adhesion contracts, and if so, are they unenforceable?
3. Did the District Court err in directing that arbitration be conducted under the rules of the American Arbitration Association as elected by the Passages?
4. Which parties are entitled to benefit of the arbitration agreement?
5. Did the District Court properly stay the claims of the children pending arbitration of their parents’ claim?
Prudential-Bache Securities, Inc. (Prudential) is the New York correspondent of G.T. Murray Company. The other three defendants are or were officers or employees of G.T. Murray Company. Beginning in 1983, the Passages opened several accounts at the G.T. Murray office in Helena, Montana. The accounts included two “target accounts” and two regular accounts, with total deposits of $429,403.30. Neva Passage also opened accounts for each of their two children with total deposits valued at $13,440.97. Larry Passage opened an account for Twila Passage, his mother, with total deposits valued at $27,187.51. When they opened their regular and target accounts, Larry and Neva Passage signed customer agreement forms, a copy of which is appended to this opinion. Twila Passage also signed a customer agreement form. The customer agreement forms included arbitration clauses providing as follows:
“Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, . . . shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election.”
*63 In February 1985, the Passages filed suit in the District Court for Lewis and Clark County, charging defendants with various violations of state securities laws and duties in handling their accounts. The complaint alleged losses in the regular and target accounts of $320,104.82, losses in the children’s accounts of $4,770, and loss in the Twila Passage account of $10,210.15. Defendants filed demands for arbitration. The District Court found that the accounts, except for the children’s accounts, were subject to valid arbitration clauses and granted the motion of defendant Prudential to compel arbitration. It denied the motion of defendants G.T. Murray Company, Richard C. Dobbins, William Crownley, and G.T. Murray (the Murray Defendants) to compel arbitration. It held that there was a question of whether the Murray defendants had standing to demand arbitration, but stated that this was immaterial since Prudential undisputedly had the necessary standing. The court also held that the client agreements containing the arbitration clauses did not apply to the accounts opened in the names of the Passage children, but it stayed judicial proceedings on the children’s claims until arbitration is completed on the other claims. Each of the parties has appealed on portions of the judgment which are unfavorable to it.
I
Did the District Court correctly determine that it had jurisdiction to order arbitration of the Passages’ claims under the Federal Arbitration Act?
This area of the law is undergoing rapid and comprehensive change as a result of recent U.S. Supreme court decisions. That Court’s decision in Southland Corp. v. Keating (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1, conclusively answers this question. In that case, Southland Corporation, the owner and franchisor of 7-Eleven convenience stores, was charged by 7-Eleven franchisees with fraud, oral misrepresentation, breach of contract, breach of fiduciary duty, and violation of state disclosure requirements in its franchise agreements. Southland Corporation appealed the decision of the California Court of Appeals that arbitration clauses in Southland’s contracts with its franchisees were rendered void by California’s Franchise Investment Law, which required judicial consideration of claims brought under it. The Supreme Court reversed. It held that, as interpreted, the California Franchise Investment Law conflicted *64 with the Federal Arbitration Act and violated the Supremacy Clause. The Court reasoned:
“In enacting Section 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration . . .
“Congress has thus mandated the enforcement of arbitration agreements.”
Southland, 465 U.S. at 10. 104 S.Ct. at 858. In answer to the argument that claims brought in state court are not subject to the Arbitration Act, the Court stated:
“. . . it is clear beyond question that if this suit had been brought as a diversity action in a federal district court, the arbitration clause would have been enforceable. (Citation omitted.) The interpretation given to the Arbitration Act by the California Supreme Court would therefore encourage and reward forum shopping. We are unwilling to attribute to Congress the intent, in drawing on the comprehensive powers of the Commerce Clause, to create a right to enforce an arbitration contract and yet make the right dependent for its enforcement on the particular forum in which it is asserted. And since the overwhelming proportion of all civil litigation in this country is in the state courts, we cannot believe Congress intended to limit the Arbitration Act to disputes subject only to federal-court jurisdiction. Such an interpretation would frustrate congressional intent to place ‘(a)n arbitration agreement . . . upon the same footing as other contracts, where it belongs.’ H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924).
“In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.”
Southland, 465 U.S. at 15-16, 104 S.Ct. at 860-861. Under South-land, a state court clearly has jurisdiction to order arbitration under the Federal Arbitration Act.
We affirm the District Court as to this issue.
II
Are the arbitration agreements in this case adhesion contracts, and if so, are they unenforceable?
The customer agreement forms signed by the Passages are one-page documents, but they contain a number of complex and techni *65 cal agreements and promises on the parts of both parties. The arbitration clause, paragraph 14, is printed in the same typeface as the rest of the form. It is one of the longer provisions in the agreement. The Passages invested a significant amount of money with defendants, and there has been no suggestion that they require protection because they are in any way improvident persons.
The Southland opinion does not mandate that all arbitration clauses are enforceable:
“We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract ‘evidencing a transaction involving commerce’ and such clauses may be revoked upon ‘grounds as exist at law or in equity for the revocation of any contract.’ ”
Southland, 465 U.S. at 10-11, 104 S.Ct. at 858-859. The agreement between the Passages and Prudential clearly involves interstate commerce, since its object was purchase and sale of securities through a public stock exchange.
The Passages contend that the agreement should be declared unenforceable upon “grounds as exist at law or in equity for the revocation of any contract.” The Passages argue that this clause is revocable because it appears in a contract of adhesion. They have cited post-Southland cases in which state courts have declared void arbitration and clauses in contracts of adhesion. However, the factual and legal situations in those cases are different from the one here. In Victoria v. Superior Court (1985), 40 Cal.3d 734, 222 Cal.Rptr. 1, 710 P.2d 833 (patient was sexually assaulted by an orderly), the holding that the arbitration clause would be set aside was based on the court’s determinations that the scope of the arbitration clause was unclear, its ambiguity should be interpreted against the hospital-drafter, and it was unlikely that the parties intended the arbitration clause to apply in these circumstances. In Obstetrics and Gynecologists v. Pepper (Nev.1985), 693 P.2d 1259 (gynecology clinic patient suffered cerebral incident while on oral contraceptives), the appellate court upheld the district court’s setting aside of an arbitration clause. The appellate court stated the district court had not made findings and conclusions but reasoned that the district court could have found the agreement was an adhesion contract and was not knowingly entered.
The Passages also argue that this Court’s opinion in Anderson v. Baker (1982), 196 Mont. 494, 641 P.2d 1035 (adhesion contracts con *66 strued against the drafter), and Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 656 P.2d 820 (insurance policy clause examined using consumer approach), should be extended so that the enforceability of this arbitration clause would be examined from a consumer approach. They contend that under the consumer approach the provision for arbitration should be stricken, since it was not clearly established that the Passages were put on notice of the arbitration clauses.
In contrast, the federal courts have held arbitration clauses in brokerage agreements enforceable:
“Contracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms. (Citation omitted.) Here, the investor is faced with an industry wide practice of including Arbitration Clauses in standardized brokerage contracts. As the investor faces the possibility of being excluded from the securities market unless he accepts a contract with such an agreement to arbitrate, such clauses come within the adhesion doctrine. However, mere inequality in bargaining power does not render a contract unenforcible [sic], (Citation omitted.) nor are all standardized contracts unenforcible [sic]. (Citations omitted.) As a consequence of current commercial realities, form forum clauses will control, absent a strong showing it should be set aside. (Citation omitted.) For such a contract or clause to be void, it must fall within judicially imposed limits of enforcement. It will not be enforced against the weaker party when it is: (1) not within the reasonable expectations of said party or (2) within the reasonable expectations of the party, but, when considered in its context, is unduly oppressive, unconscionable or against public policy. (Citations omitted.)
“Such pre-dispute arbitration agreements are not outside the reasonable expectations of the investor. (Citation omitted.) Nor are they contrary to public policy, as indicated by the judicial and legislative presumption favoring the arbitration of such disputes. (Citation omitted.)”
Finkle and Ross v. A.G. Becker Paribas, Inc. (D.C.N.Y. 1985), 622 F.Supp. 1505, 1511-12.
There is nothing in the record to indicate that the arbitration clause in the client agreement form was not within the parties’ reasonable expectations. Nor is there any evidence that the clause is oppressive or unconscionable. The federal caselaw demonstrates *67 that arbitration clauses are common, and may be universal, in brokerage agreements. In Southland, which like the present case involved allegations of fraud and misrepresentation, the public policy of enforcement of arbitration clauses was forcefully stated. We conclude that even if the customer agreement form is an adhesion contract, there is nothing in the record and no compelling law to prevent enforcement of the arbitration clause. We affirm the District Court’s holding that the arbitration clause is enforceable.
III
Did the District Court err in directing that arbitration be conducted under the rules of the American Arbitration Association as elected by the Passages?
The Murray defendants argue that the Passages’ election of arbitration rules should not be honored, since they did not consent to arbitration. The Passages’ April 16, 1985 election of the American Arbitration Association was made within the 5 days allowed from the date of demand for arbitration, as required in paragraph 14 of the customer agreement form. The selection complied in all respects with the requirements of the contract, but was made contingent upon arbitration being compelled by the court. We conclude that the District Court properly honored the Passages’ election of arbitration rules, once it determined that arbitration was proper.
IV
Which parties are entitled to benefit of the arbitration agreement?
The District Court found the Murray defendants were not signatories to the customer agreement forms. It therefore denied the Murray defendants’ motion to compel arbitration. An examination of the customer agreements reveals that Prudential was not a signatory either, although its name or the name of its predecessor in interest was printed at the top of each of the forms. The customer agreement form does not clearly indicate the identity of the party or parties with whom the Passages were contracting; it refers to “you”, with no explanation of who “you” is. The District Court granted Prudential’s motion to compel arbitration.
All of the claims in the Passages’ complaint relate to mishandling or unwise management of the Passages’ accounts opened at the G.T. Murray office. It is our conclusion that since the claims against *68 Prudential and against the Murray defendants arise out of the same facts and the same actions, to separate the claims as to the defendants would be inappropriate. There is support for this conclusion:
“Ross (the investor) argues that her claims should not be arbitrated for several reasons. First, she argues that the claims against Mathis (the broker) should not be arbitrated because he is not a party to the agreement. Although Mathis did not sign the agreement, the causes of action against him may be arbitrated. Every allegation against him arises out of his handling of Ross’ account as a Bear Stearns employee. Her damages are predicated on Mathis’ alleged breach of a myriad of state and federal duties concerning her account at Bear Stearns. Ross’ assertions based upon her trust in Mathis due to their relationship do not change this fact. Any breach of trust dealt with Mathis’ actions regarding Ross’ accounts with Bear Stearns. Thus, her case against Mathis is based solely on her account, which the arbitration agreement covers.”
Ross v. Mathis (N.D.Ga. 1985), 624 F.Supp. 110, 113-14. That court held that the claims against broker Mr. Mathis were arbitrable.
We hold that the Passages’ claims against all of the defendants are arbitrable.
V
Did the District Court properly stay the claims of the children pending arbitration of their parents’ claims?
Both Prudential and the Passages object to the District Court’s order staying the claims on the Passage children’s accounts pending arbitration of the other claims. Prudential argues that the claims on the Passage children’s accounts are subject to arbitration along with the other claims. The Passages argue that the District Court was correct in finding the children’s accounts were not included under the terms of the client agreement forms. They contend, however, that it is unjust to stay court action on the children’s claims.
Neva Passage opened the accounts in the names of the children and deposited all funds into them. The children are teenagers, and the daughter has attained the age of majority during the course of this action. The amounts deposited in the children’s accounts are not large in comparison with the deposits to the other accounts. There is nothing in the record to conclusively establish the nature of these accounts, whether as completed gifts, funds held in trust, or otherwise. The Passages’ complaint states that Larry and Neva Pas *69 sage are ‘guardians’ of their children but no facts are known as to the technical or legal aspects of the guardian status. We conclude that a factual question remains as to whether Larry and Neva Passage have an interest in the children’s accounts, subjecting the accounts to the arbitration agreement.
Issues which go to the formation of the contract as a whole may properly be decided by an arbitrator. Merrill Lynch, Pierce, Fenner, etc. v. Haydu (5th Cir. 1981), 637 F.2d 391, 398. We have here an issue of whether the children’s accounts are covered by the customer agreement forms. We reverse the order of the District Court on this issue. The District Court shall enter an order submitting this issue to arbitration.
Affirmed in part and reversed in part.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, GULBRANDSON, SHEEHY and HUNT concur.
*70 [[Image here]]