CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
The District Court for the Second Judicial District, Silver Bow County, refused to enforce three arbitration agreements entered between Marlene Chor and Piper, Jaffray & Hopwood, Inc. (Piper). Piper appeals. We reverse and remand.
The issues are:
1. Did the court err by refusing to enforce the agreements because Piper did not fully comply with Rule 21 of the National Association of Securities Dealers?
2. Did the District Court err by relying on Chor’s intent not to be bound by the legal consequences of the arbitration clauses in the agreements she signed?
*146 3. Did the court err by concluding the arbitration agreements are void because they are unconscionable or contracts of adhesion?
4. Did the court err by concluding that the agreements are void because Piper committed actual and constructive fraud by not explaining the legal implications of the arbitration clauses to Chor when she signed the agreements?
Marlene Chor was forty-seven years old when this matter was heard in the District Court. Although she was not a sophisticated investor in securities, she has a college degree and was president, part-owner, and operator of a million-dollar-a-year gambling machine business. She and her brother, Martin Andre, became owners of the business after their father’s death in 1985.
In 1988, Chor became acquainted with defendant John Schultz. Schultz was a broker for Piper and was registered as a securities salesman. Relying on Schultz’s advice, Chor invested in stock and bought an annuity through Piper. Chor testified that she signed many papers with Piper and that Schultz pointed out the important items in the documents and explained their impact to her.
In August of 1989, based upon Schultz’s advice and direction, Chor wrote a check for $25,000 to “The Terran Corporation” for purchase of one of the Terran investments. The following month, she wrote a check to “Terran Financial Group” in the amount of $25,000 and delivered it to Schultz for a second Terran investment. Chor received certificates of a limited partnership interest in “Terran Partners I Limited Partnership.”
In August of 1990, the Montana State Auditor’s Office issued a cease and desist order in connection with the sale of the Terran Partnership I Limited Partnership. Chor and Andre (who had also invested in Terran) filed this suit against Piper and Schultz. Because Andre did not sign any agreements containing arbitration clauses, Piper has not challenged the District Court’s jurisdiction to decide his claim.
Piper contends it had no role in marketing the Terran investments and that Schultz was acting independently in selling them to Chor. The validity of that defense has not yet been decided. Here, Piper argues that if it is held responsible in this action, Chor’s claims are subject to arbitration, pursuant to three agreements she signed.
The first agreement, denominated a “Co-owner Account Agreement,” was executed on June 17, 1988. Chor testified that she was led to believe the only purpose for the agreement was so that she and *147 her husband could hold an account jointly. The third page of the agreement includes a paragraph entitled “Arbitration:”
We agree to arbitrate any disputes between PJH and us. We specifically agree and recognize that all controversies which may arise between PJH, its agents, representatives or employees and us, concerning any transaction, account or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration to the full extent provided by law. Such arbitration shall be in accordance with the rules then in effect of the Arbitration Committee of the New York Stock Exchange or the National Association of Securities Dealers, Inc., as we may elect. We authorize PJH, if we do not make such election by registered mail addressed to PJH at its main office within fifteen (15) days after receipt of notification from PJH requesting such election, to make such election on our behalf.
On September 30, 1988, Chor signed another Co-owner Account Agreement, for an account she held with her son. That agreement contained the same arbitration provision set forth above.
The third arbitration agreement was contained on page 4 of a Margin Agreement Chor signed in Februaiy 1991. Chor testified she believed the purpose of the Margin Agreement was to clear up a debit balance on her account. She further testified that she believed the arbitration provision in the Margin Agreement would apply to future disputes only.
The District Court denied Piper’s motion to compel arbitration, stating that it first needed to rule on the validity of the arbitration agreements. It held a joint hearing on that question for purposes of this case and another case which was also appealed to this Court, Mueske v. Piper, Jaffray & Hopwood (1993), [260 Mont. 207], 859 P.2d 444, 50 St. Rep. 1009.
After the hearing, the District Court ruled that the arbitration agreements are invalid. The court concluded that: Piper failed to correct its procedures and amend its account forms to reflect new disclosure requirements under the Rules of the National Association of Securities Dealers; Chor did not intend that the arbitration clause would be utilized in the event that she was defrauded by Piper or one of its agents; the Co-owner Account Agreements are adhesion contracts which do not state their effect of waiving the right to trial by jury, and enforcement of the arbitration clauses would therefore be unconscionable; and Chor’s consent to the Co-owner Account Agree *148 ments was obtained through actual and constructive fraud. Piper appeals.
Before we discuss the issues raised in this case, we point out that contracts requiring arbitration of disputes are as enforceable in Montana as are any other contracts. Section 27-5-114, MCA. Further, this Court has acknowledged the federal policy favoring arbitration. E.g., Vukasin v. D.A. Davidson & Co. (1990), 241 Mont. 126, 133, 785 P.2d 713, 718; Passage v. Prudential-Bache Securities, Inc. (1986), 223 Mont. 60, 64, 727 P.2d 1298, 1300, cert. denied 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518.
I
Did the court err in refusing to enforce the agreements because Piper did not fully comply with Rule 21 of the National Association of Securities Dealers?
The arbitration agreements between Piper and Chor are governed, through operation of their terms, by the rules of the National Association of Securities Dealers (NASD). Effective September 7, 1989, NASD Rule 21(f)(3) required that:
A copy of the agreement containing any such [arbitration] clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document.
Piper did not obtain Chor’s signature acknowledging receipt of a copy of any of the three arbitration agreements she signed.
However, by its own terms, NASD Rule 21 does not apply retroactively. The rule provides at subsection (f)(5) that: “The requirements of this subsection (f) shall apply only to new agreements signed ... after September 7,1989.” Therefore, the first two arbitration agreements, which Chor signed in 1988, are not subject to the requirements of Rule 21.
The Margin Agreement, on the other hand, is subject to Rule 21. We held in Mueske that failure to comply with controlling law incorporated into an arbitration agreement, such as an NASD rule, renders a pre-dispute arbitration clause invalid. Mueske, [260 Mont. 207], 859 P.2d at 447, 50 St.Rep. at 1013. Based on our holding in Mueske, we hold that the arbitration provision in the Margin Agreement between Chor and Piper is invalid for violation of NASD Rule 21(f)(3).
Without citing authority, the District Court concluded that the Margin Agreement superseded the two previous agreements. Chor does not defend that conclusion. Because there is nothing in the *149 Margin Agreement to indicate it supersedes or nullifies the first two agreements, and in the absence of any citation to legal authority supporting the District Court’s conclusion, we conclude that the court was in error. We will therefore proceed to analyze the remaining issues as to the first two arbitration agreements.
II
Did the District Court err by relying on Chor’s intent not to be bound by the legal consequences of the arbitration clauses in the agreements she signed?
As Piper has pointed out, Chor does not address this issue in her brief to this Court, effectively conceding it. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. Section 28-3-303, MCA. We hold that the District Court erred in relying upon Chor’s subjective intent not to be bound by the legal consequences of the arbitration clauses in the agreements she signed.
Ill
Did the court err by concluding the arbitration agreements are void because they are unconscionable or contracts of adhesion?
In Passage, this Court held that an arbitration clause may be enforced even if the agreement in which the clause appears is an adhesion contract, absent evidence that the arbitration clause was not within the parties’ reasonable expectations or that the clause is oppressive or unconscionable. Passage, 727 P.2d at 1302. Chor maintains that this case presents an exception to the general rule stated in Passage because, here, the District Court specifically concluded that the arbitration clauses were not within the parties’ reasonable expectations. This conclusion was erroneous, based on Chor’s own deposition testimony.
Chor testified that she read the arbitration agreements before signing them and that her understanding of the first agreement was “if I were to have any problems, that we would agree to arbitrate the problem.” As to her claim that she did not fully understand the legal impact of the arbitration clauses, a party cannot avoid the legal consequences of an agreement simply by later claiming that she did not understand the impact of the plain language of the contract on her legal rights. See Wright v. Elevens (1985), 217 Mont. 439, 444, 705 P.2d 113, 117. More specifically, “Agreements to arbitrate disputes in accordance with SEC-approved procedures are not unconscionable *150 as a matter of law.” Cohen v. Wedbush, Noble, Cooke, Inc. (9th Cir. 1988), 841 F.2d 282, 286.
Chor also claims that her agreements with Piper are contracts of adhesion.
Contracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms.
Finkle and Ross v. A.G. Becker Paribas, Inc. (D.C.N.Y. 1985), 622 F.Supp. 1505, 1511, as cited in Passage, 727 P.2d at 1301. This claim is not convincing in light of Chor’s deposition testimony. Chor testified that since 1983 she had investment accounts with five other brokerage houses besides Piper, none of which required her to consent to arbitrate future disputes. She clearly had the ability to go elsewhere if the terms of the agreement with Piper did not suit her. Indeed, she did so in the spring of 1990, when Schultz left Piper. At that time, Chor terminated her accounts with Piper and transferred them to another brokerage firm for a few months, before returning to Piper.
The arbitration clauses here discussed, by their plain meaning, concern stock transactions. By no stretch of judicial fiction or fantasy does this opinion suggest that the clauses would bind Chor to arbitrate a claim based on an automobile accident with a Piper secretary, or other torts not related to stock transactions, as postulated in the concurring and dissenting opinion.
We hold that the District Court erred in concluding the arbitration agreements are void due to unconscionability or because they are contracts of adhesion.
IV
Did the court err by concluding that the agreements are void because Piper committed actual and constructive fraud by not explaining the legal implications of the arbitration clauses to Chor when she signed the agreements?
A prima facie case of actual fraud or constructive fraud would require, among other elements of proof, evidence that Piper misrepresented or omitted some material fact. Van Ettinger v. Papin (1978), 180 Mont. 1, 10, 588 P.2d 988, 994 (actual fraud); Hartfield v. City of Billings (1990), 246 Mont. 259, 263, 805 P.2d 1293, 1296 (constructive fraud). The District Court concluded that Piper made a materially false representation to Chor by failing to inform her that she waived *151 her right to a jury trial by signing the first two arbitration agreements.
In order for an omission, rather than an affirmative misrepresentation, to constitute fraud, the plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue. Chiarella v. United States (1980), 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348, 356. According to Chor, a duty arose from the commercial nature of the relationship between herself and Piper, the admissions of Piper, and § 30-10-301(1), MCA, concerning prohibited practices in securities transactions.
Chor cites McJunkin v. Kaufman & Broad Home Systems (1988), 229 Mont. 432, 748 P.2d 910, as authority establishing a duty on the part of Piper to disclose the legal effect of the arbitration clause to her, as a result of the commercial relationship between them. In McJunkin, the buyer of a mobile home alleged that the seller failed to inform him of structural defects therein. This Court stated:
We have recognized that a sufficient duty can arise in a commercial transaction such as the one at hand. [Citation omitted.] We find the defendants had a duty to refrain from intentionally or negligently creating a false impression by words or conduct. [Citations omitted.]
McJunkin, 748 P.2d at 915.
The admissions of Piper upon which Chor relies are contained in the deposition of her Piper stockbroker. He “admitted” that he owed her a duty to assess her needs and to recommend to her appropriate investments to fit those needs. He also “admitted” that it is reasonable for a customer to rely upon her broker’s information and that the broker owes a duty to use reasonable care in giving information to customers.
Section 30-10-301(1), MCA, provides:
It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, in, into, or from this state, to:
(a) employ any device, scheme, or artifice to defraud;
(b) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
*152 This Court has stated that § 30-10-301(1), MCA, creates an implied code of conduct for brokers, violation of which may constitute a breach of the duty that a broker owes to his customer. Brown v. Merrill Lynch, Pierce, Fenner, Etc. (1982), 197 Mont. 1, 9-10, 640 P.2d 453, 457. Brown involved a broker’s alleged failure to warn a customer of the amount of risk involved in a “tax straddle” investment.
We are unwilling to construe this Court’s rulings in McJunkin and Brown so broadly as to state that a stockbroker has a duty to disclose to his customers every possible misunderstanding which might be reached upon signing a contract. Nor do the “admissions” of Chor’s Piper stockbroker establish a duty to inform a customer of the specific legal ramifications of an agreement to arbitrate. His “admissions” only emphasize that the central focus of a relationship between a stockbroker and an investor is the wise investment of funds according to the goals of the investor.
In Cohen, the Ninth Circuit Court of Appeals considered investors’ claims of fraud against their stockbroker for persuading them to sign an agreement to arbitrate future disputes with the broker. The investors alleged that the broker had told them the agreement to arbitrate would “not compromise any of [their] rights.” Cohen, 841 F.2d at 286. The Ninth Circuit stated:
We know of no case holding that parties dealing at arm’s length have a duty to explain to each other the terms of a written contract. We decline to impose such an obligation where the language of the contract clearly and explicitly provides for arbitration of disputes arising out of the contractual relationship.
Cohen, 841 F.2d at 287. We agree with the Ninth Circuit Court of Appeals.
The plaintiffs’ case in Cohen was stronger than that of Chor, because Chor has only alleged an omission, rather than a positive misrepresentation. Further, there is no evidence that Piper or its agents concealed information from Chor. She testified that she had ample opportunity to ask questions of Schultz and that he responded to all questions she asked.
Chor argues that Schultz’s role as her investment advisor supports a finding that a fiduciary relationship existed between them and that his breach of his duty as a fiduciary to explain to her the effect of the arbitration clause justifies her claim of constructive fraud. Absent special circumstances, a fiduciary duty is required to prove constructive fraud. Bottrell v. American Bank (1989), 237 Mont. 1, 20-21, 773 P.2d 694, 706. However, “a fiduciary relationship is not *153 automatically established in a stockbroker-client relationship.” United Methodist Church v. D.A. Davidson (1987), 228 Mont. 288, 296, 741 P.2d 794, 799 (Sheehy, J., dissenting). In the absence of discretionaiy authority by a stockbroker to buy and sell in a customer’s account, no fiduciary relationship is created in a broker-customer relationship. Caravan Mobile Home Sales v. Lehman Bros. Kuhn Loeb (9th Cir. 1985), 769 F.2d 561, 567.
Chor has not alleged that Piper stockbrokers had discretionary authority over her accounts. She stated that Schultz “acted as if he did,” but that she made it clear to him that he did not have the authority to buy and sell stocks in her account without her permission. The District Court’s finding that Piper had de facto control over Chor’s accounts is therefore clearly erroneous.
Chor has provided no legal or factual reason for this Court to ignore Cohen and the general nde binding a person to the written agreements she enters. We conclude that no duty has been established on the part of Piper to explain to Chor, at the time the first two arbitration agreements were entered, that by signing the agreements to arbitrate future disputes, she waived her right to a jury trial. We therefore hold that the District Court erred in concluding that the arbitration agreements are void based upon actual or constructive fraud.
Finally, Chor maintains in her brief to this Court that the language of the arbitration agreements is too narrow to include matters outside the contracts themselves. This claim was not raised in the court below. It therefore will not be considered.
We hold that the arbitration agreements entered between Chor and Piper on June 17,1988, and on September 30,1988, are binding and enforceable. Reversed and remanded for further proceedings consistent with this Opinion.
JUSTICES HARRISON and WEBER concur.