No. 04-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 37

HARRY WILLEMS,

        Plaintiff and Respondent,

    v.

U. S. BANCORP PIPER JAFFRAY, INC.,
THOMAS J. O'NEILL, ROBERT ENGLISH,
and JOHN DOES I through X,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Second Judicial District,
                      In and For the County of Cause No. DV 2003-25,
                      Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Stanley T. Kaleczyc and Brand G. Boyar, Browning, Kaleczyc,
                Berry & Hoven, P.C., Helena, Montana

                John S. Lutz, Fairfield and Woods, P.C., Denver, Colorado

                Robert J. Phillips, Phillips & Bohyer, P.C., Missoula, Montana (O'Neill)

        For Respondent:

                William P. Joyce, Joyce & Johnston, PLLP, Butte, Montana

                             Submitted on Briefs:  November 30,
2004

                                     Decided:  February 22, 2005

Filed:

                        _____
                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 This case is one of 23 lawsuits filed by individual investors against U.S. Bancorp Piper Jaffray, Inc. (Piper), Robert English (English), and Tom O'Neill (O'Neill). The plaintiff investors made various common law tort claims arising from the alleged mismanagement of their accounts created and maintained by Piper's branch office in Butte, Montana. O'Neill, who was a securities broker in Piper's Butte office,[1] allegedly took the actions that gave rise to the lawsuits, and English was O'Neill's direct supervisor throughout this time. In response to the lawsuits, Piper filed motions to compel arbitration in each case, seeking to enforce "pre-dispute" arbitration clauses–that is, clauses in the account agreements which required any dispute be resolved by arbitration. Piper's motions to compel arbitration led to a series of hearings by a panel of three district court judges, who were sitting individually on the cases, but who sat *en banc* to hear evidence common to all 23 cases. In addition, individual hearings were held with respect to several of the individual plaintiffs. While Piper called common witnesses to testify, O'Neill, in a prior discovery deposition, invoked his Fifth Amendment right against self-incrimination and did not offer testimony regarding the accounts at issue.

¶2 Harry Willems (Willems) is the plaintiff in this matter. On April 7, 2004, the Second Judicial District Court, Silver Bow County, denied Piper's motion to compel arbitration of Willems's claims, and Piper appeals therefrom. We affirm.

---

[1]At the time the lawsuits were filed, O'Neill was no longer employed at Piper.

¶3 The following issues are raised on appeal in regard to the District Court's denial of Piper's motion to compel:

¶4 Did the District Court err in holding that the PAT Plus Agreements created a fiduciary duty between Piper and Willems that was breached by Piper?

¶5 Did the District Court violate the Federal Arbitration Act and Montana law by holding the arbitration agreement to a different contractual standard when it concluded the PAT Plus Agreements were contracts of adhesion?

¶6 Did the District Court err in applying the *Kloss* factors?

¶7 Did the District Court err in holding that Willems failed to effectively waive his constitutional rights?

¶8 Is the securities arbitration process, held before a self-regulatory organization overseen by the United States Securities and Exchange Commission, fair and reasonable as a matter of law?

¶9 The District Court's order offered an extensive analysis of all issues raised by the parties. The District Court determined that the PAT Plus Agreements were contracts of adhesion; that Piper's pre-arbitration dispute provisions were unconscionable and not within plaintiffs' reasonable expectations; that Piper failed to demonstrate that plaintiffs voluntarily, knowingly, and intelligently waived their constitutional rights to a jury trial and access to the court; Piper failed to demonstrate that plaintiffs received or reviewed the arbitration provision; and that a fiduciary duty was created by Piper's PAT Plus Agreements and breached by the defendants. We conclude that the issue pertaining to the fiduciary duty is

3

determinative on appeal and therefore will not address the other issues, except as necessary to resolve the dispositive issue.

## FACTUAL AND PROCEDURAL BACKGROUND

¶10    In 1986, Willems retained O'Neill as his broker and financial advisor to help him open a Self-Directed Individual Retirement Account (1986 IRA).  Later that year, Willems opened a Joint Piper Automatic Transfer Account with his wife Marie Willems, which he later upgraded to a Co-Owner Piper Automatic Transfer Plus Account in 1995.  On November 9, 1993, Willems opened a Co-Owner Piper Automatic Transfer Plus Account with his mother Bernice Willems.  The 1993 and 1995 Piper Automatic Transfer Plus Account agreements hereinafter shall be collectively referred to as the "PAT Plus Agreements."

¶11    Willems claims that O'Neill, supervised by English, engaged in unlawful, unreasonable, and unethical conduct relating to the 1986 IRA, which did not contain a pre-dispute arbitration clause.  Willems contests Piper's invocation of the PAT Plus Agreements' arbitration clauses because: (1) his claims are not based upon transactions in these accounts; and (2) Willems was informed that the PAT Plus Agreements were entirely separate and distinct from his 1986 IRA, and therefore had no affect on his 1986 IRA.  Conversely, Piper explains that by signing the PAT Plus Agreements, Willems agreed to arbitrate disputes relating to *any* account he held with Piper, and notes the following language found in both PAT Plus Agreements:

> You agree to arbitrate **any disputes** between Piper Jaffray and you.  You specifically agree and recognize that **all controversies** which may arise

4

between Piper Jaffray, its agents, representatives or employees and you concerning any transaction, account of the construction, performance or breach of this or **any other agreement between us, whether entered into prior, on, or subsequent to the date hereof** shall be determined by arbitration to the full extent provided by law. [Emphasis added.]

Thus, it is the arbitration provisions, set forth in the PAT Plus Agreements and incorporating Willems's 1986 IRA, which are at issue herein.

¶12 On January 24, 2003, Willems filed a complaint in the Second Judicial District Court against Piper, English, and O'Neill alleging mismanagement of his 1986 IRA. On March 24, 2003, Piper filed a motion to compel arbitration based upon the provisions of the PAT Plus Agreements requiring arbitration of disputes in any of Willems's accounts. On July 9, August 12, and September 3, 2003, a panel of three district court judges sat *en banc* to hear evidence common to all 23 cases arising from the alleged misconduct of Piper's broker, O'Neill. On April 7, 2004, the District Court denied Piper's motion to compel arbitration and stay proceedings. Piper appeals therefrom.

### STANDARD OF REVIEW

¶13 We review whether a district court's conclusions of law are correct in determining whether or not an issue is subject to arbitration under an existing agreement. *Iwen v. U.S. West Direct*, 1999 MT 63, ¶ 17, 293 Mont. 512, ¶ 17, 977 P.2d 989, ¶ 17. When a district court is asked to compel arbitration of a dispute, the threshold inquiry is whether the parties agreed to arbitrate. *Solle v. Western States Ins. Agency*, 2000 MT 96, ¶ 22, 299 Mont. 237, ¶ 22, 999 P.2d 328, ¶ 22. Because arbitration is a matter of contract, the rules of contract

5

apply, and a party cannot be required to submit to arbitration any dispute that the party has not agreed to submit. *Solle*, ¶¶ 22-23.

¶14   A fiduciary relationship is created whenever a broker has discretion to buy, sell, or otherwise control a client's account. *Chor v. Piper, Jaffray & Hopwood, Inc.* (1993), 261 Mont. 143, 153, 862 P.2d 26, 32. In determining the scope or extent of the fiduciary obligation, our review becomes highly fact intensive. *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 35, 310 Mont. 123, ¶ 35, 54 P.3d 1, ¶ 35.

## DISCUSSION

¶15   **Did the District Court err in holding that the PAT Plus Agreements created a fiduciary duty between Piper and Willems that was breached by Piper?**

¶16   In *Chor*, we held that § 30-10-301(1), MCA, creates an implied code of conduct for brokers, violations of which may constitute a breach of the duty that a broker owes to his customer. *Chor,* 261 Mont. at 152, 862 P.2d at 31-32. We further held that in the absence of discretionary authority by a broker to buy and sell in a customer's account, no fiduciary relationship is created between the broker and the customer. *Chor*, 261 Mont. at 153, 862 P.2d at 32. In *Kloss*, we inversely restated that principle, holding that "a fiduciary relationship *is created* whenever a broker has discretion to buy and sell in the client's account." *Kloss*, ¶ 35. Thus, we begin our analysis by first determining whether the PAT Plus Agreements granted such discretion to Piper's brokers.

6

¶17     Piper argues that the PAT Plus Agreements did not grant it discretion to make trades on behalf of its clients and therefore did not create a fiduciary duty.  Piper contends the District Court improperly interpreted the following underlined contract provisions:

> **Customer's Orders Binding Until Notice of Death**
> Upon your death or failure to comply with any part of this Agreement <u>or whenever Piper Jaffray deems it necessary for its protection, Piper Jaffray is authorized (but is not required) to</u>:
>         - Cancel outstanding orders;
>         - <u>Purchase, sell, assign, receive and deliver all or any part of the securities held or carried for you</u>; and
>         - Close out short sales by purchase upon any exchange board or market or any public or private sale at Piper Jaffray's option.

(Underlining added.)  In particular, Piper claims that the phrase, "whenever Piper Jaffray deems it necessary for its protection," concerns Piper's rights upon a client's death or when a client is otherwise incapacitated.  Piper makes note that upon the death or incapacity of a client, it must have a limited discretion over the client's accounts in case the securities decline in value so that it may ensure it is in compliance with certain federal requirements, but that this limited discretion is not sufficient to trigger discretion for purposes of creating a fiduciary duty.  Thus, Piper urges this Court to not derive a "broad" or "unfettered" grant of discretion from the middle of a provision that merely concerns Piper's rights upon the death or incapacitation of a client.

¶18     Additionally, Piper notes that its Supervisory Procedures Manual provides that a client must execute additional documents if the client wishes to grant discretion to Piper.  Piper claims that Willems did not execute the required documentation according to the procedures in the supervisory manual.  Piper argues that the fact that Willems's claims include

7

allegations that Piper made "unauthorized transactions" in his 1986 IRA, a nondiscretionary account, is additional evidence that Willems understood that Piper lacked discretion to independently authorize transactions.

¶19    Finally, Piper argues that *Kloss* does not control the outcome here for two reasons. First, Piper asserts that the brokerage account agreement in *Kloss* is distinguishable from the PAT Plus Agreements.  Second, it argues that the *Kloss* holding that a broker has a fiduciary duty to disclose and explain the arbitration clause within the account agreement is "in contrast to most statements of law."  Piper contends that if a broker had discretion in handling an account, the broker's duties would not extend beyond financial management. Furthermore, Piper claims that brokers should not have the duty to read and explain arbitration clauses to clients since clients come to brokers for financial advice, not legal advice, and the broker may be engaging in the unauthorized practice of law.

¶20    Piper's second *Kloss* argument is essentially an invitation to revisit and reverse our holding in *Kloss*.  However, we see no error in the *Kloss* Court's analysis as to the fiduciary duty in this context, and therefore, we decline Piper's invitation to revisit that decision.  We reject Piper's argument that such discretion does not create a fiduciary obligation to explain the arbitration provisions, or that such an obligation requires the broker to engage in the unauthorized practice of law.  The obligation is one which accompanies the fiduciary relationship created when a broker accepts a customer's authorization to make transactions within the customer's account in the broker's own discretion.

¶21 Willems responds to Piper's first *Kloss* argument by arguing that the language highlighted in the PAT Plus Agreements is similar to the language in the *Kloss* agreement, which provided:

> You may sell any or all property held in any of my accounts and cancel any open orders for the purchase or sale of any property without notice, in the event of my death or whenever in your discretion you consider it necessary for your protection.

*Kloss*, ¶ 36. We determined that this language granted discretion to the broker to buy and sell securities on behalf of the broker's client. *Kloss*, ¶¶ 36-37. Thus, Willems asserts the District Court properly concluded that the similar language in the PAT Plus Agreements likewise granted such discretion, thereby creating a fiduciary duty on behalf of the broker to explain the consequences of arbitration to clients.

¶22 In spite of Piper's contention that it is required under federal law to have "limited discretion" to make transactions on behalf of its clients to ensure compliance with certain federal requirements, the PAT Plus Agreements contain no provisions or explanations as to this "limitation" or that the discretion granted in the agreement is effective only when securities decline in value. Moreover, the plain meaning of the following language– "upon your death **or** failure to comply with any part of this Agreement **or** whenever Piper Jaffray deems it necessary for its protection"–demonstrates that Piper retained broad authority to purchase, sell, assign, receive and deliver all or any part of the securities held by its clients. (Emphasis added.) Indeed, transactions could be made whenever Piper "deem[ed] it necessary" for its own best interest. Thus, the District Court did not err in concluding that

9

the PAT Plus Agreements granted Piper's brokers discretion to buy and sell securities, thereby creating a fiduciary duty.

¶23    Piper contends that the District Court erroneously concluded that a fiduciary duty existed <u>before</u> Willems signed the PAT Plus Agreements.  Piper explains that written contracts are only effective at delivery, and therefore a fiduciary duty, triggering an obligation to explain the arbitration provision, could not exist before the PAT Plus Agreements were signed.  Willems responds that Piper's argument is misplaced in view of our holding in *Kloss*.  Willems argues that when a fiduciary duty is created, even if it is created the very moment <u>after</u> the agreement is signed, a broker has a duty to advise its customers–pursuant to its duty of the finest loyalty–as to the nature of arbitration, or if the client may "opt out" of arbitration by crossing out the provision.

¶24    In *Kloss*, an investor opened an account which contained a pre-dispute arbitration clause.  We concluded that, because the brokerage firm had discretion to buy and sell securities in the investor's account, a fiduciary relationship was created and the broker had an obligation to explain the effect of an arbitration clause.  *Kloss*, ¶ 37.  Although we did not state that the obligation arose prior to the actual signing of the agreement, that was, by necessity, the effect of our holding.  Entering an agreement which bestows discretion upon the broker requires that the customer be advised of the agreement's arbitration provision so that an informed decision to sign the agreement can be made.

¶25    It is undisputed that Piper did not advise Willems as to the nature of the arbitration clause or that he had the option of crossing out certain provisions.  Further, the District Court

10

found, and Piper does not challenge on appeal, that Willems did not understand that by signing the PAT Plus Agreements he was in any way affecting his 1986 IRA. Therefore, in accordance with our holding in *Kloss*, we conclude the District Court did not err in holding that the PAT Plus Agreements created a fiduciary duty between Piper and Willems and that Piper breached its fiduciary duty when it failed to explain the consequences of the arbitration provision prior to the formation of the contract.

¶26 Finally, Piper contends that, pursuant to the *Kloss* Court's determination that the analysis as to whether a fiduciary duty exists is "highly fact intensive," the facts here are distinguishable from those in *Kloss*. It notes that, in *Kloss*, the broker had a regular practice of explaining key contract terms to the customer, and that this led the Court to conclude that the broker had a fiduciary duty to explain the arbitration provision to the customer. Piper thus reasons that the District Court improperly relied on *Kloss* to create a "special legal standard" regarding fiduciary duties applicable only to arbitration provisions and not to other contract provisions, in violation of the Federal Arbitration Act (FAA) and United States Supreme Court precedent.

¶27 We conclude that the District Court created no new special legal standards but instead properly applied Montana case law by relying on *Kloss*. "The FAA provides that an agreement to arbitrate is valid except where grounds exist at law or in equity to revoke the contract . . . . Montana law also requires the enforcement of predispute arbitration clauses 'except upon grounds that exist at law or in equity for the revocation of a contract.'" *Kingston v. Ameritrade*, *Inc.*, 2000 MT 269, ¶ 13, 302 Mont. 90, ¶ 13, 12 P.3d 929*, ¶ 13*

11

(citing § 27-5-114(2), MCA). Though the brokerage firm in *Kloss* had a "regular practice of explaining key contract terms," the enforceability of an arbitration provision is not dependent upon such an office custom or practice. The determination of the existence of a duty here is dependent upon all of the facts, and particularly, the extent of authority or discretion granted by the customer within the agreement.

¶28 We affirm the District Court's conclusion that Piper owed a fiduciary duty to explain the arbitration provision to Willems which was breached, and further, that the pre-dispute arbitration provisions in the PAT Plus Agreements are unenforceable.


/S/ JIM RICE

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

12