No. 04-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 191N

RAYMOND KAUFMAN, Individually and as Trustee of the
MONTANA FACIAL SURGERY PENSION AND PROFIT
PLAN and JANET L. NOTHSTINE,

        Plaintiffs and Respondents,

    v.

U.S. BANCORP PIPER JAFFRAY, INC. and
THOMAS J. O'NEILL, and JOHN DOES I through X,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow, Cause No. DV 2002-16
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Stanley Kaleczyc and Brand Boyar, Browning Kaleczyc Berry & Hoven,
                P.C., Helena, Montana; John S. Lutz, Fairfield & Woods, P.C., Denver,
                Colorado; Robert J. Phillips, Phillips & Bohyer, P.C., Missoula, Montana

        For Respondents:

                William P. Joyce, Joyce & Johnston, PLLP, Butte, Montana

                              Submitted on Briefs:  January 11, 2005

                                    Decided:  August 9, 2005

Filed:

                                  Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1	Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2	U.S. Bancorp Piper Jaffray, Inc., ("Piper") appeals an Order of the District Court for the Second Judicial District, Silver Bow County. Defendant Thomas J. O'Neill is a former Piper employee and is not a party to this appeal. The District Court denied Piper's motion to compel arbitration of claims filed against Piper by Raymond Kaufman ("Kaufman"), individually and as trustee of the Montana Facial Surgery Pension and Profit Sharing Plan ("Plan"), and Janet L. Nothstine ("Nothstine"). We affirm.

¶3	This case is one of twenty-three different lawsuits filed by investors of Piper involving the alleged mismanagement of the investors' accounts in Piper's branch office in Butte. The facts behind this particular action are that Nothstine opened a self-directed IRA on April 25, 1987, with Piper Jaffray and O'Neill. The account agreement establishing this IRA, which is the subject of this litigation, did not contain a provision regarding binding pre-dispute arbitration. Nothstine later opened a separate Roth IRA, upon O'Neill's advice. At the time she did so, she was directed to sign a PAT Plus Account Agreement in order to create the Roth IRA. The PAT Plus document contained both a pre-dispute arbitration provision and a provision purporting to allow Piper to complete transactions within the client's account.

2

Nothstine believed the two accounts were separate and distinct from each other. However, after discovering alleged mismanagement within the original account and contacting an attorney, Nothstine learned that under the provisions of the PAT Plus account, Piper was insisting upon pre-dispute arbitration of disputes concerning her original and--to her mind-- wholly separate IRA. It is undisputed that Nothstine signed the PAT Plus Account Agreement which created the Roth IRA in front of O'Neill. It would have been apparent to him that she did not read the arbitration clause before signing. He did not explain the ramifications of the arbitration clause to her.

¶4 Nothstine does not recall signing subsequent forms sent to her by Piper, but she apparently signed all documents provided to her, believing she needed to do so to maintain her accounts. The forms were presented to her on a take-it-or-leave-it basis. Nothstine was unaware of the significance of the arbitration provisions within the forms until she contacted an attorney to prosecute the claims underlying this litigation.

¶5 Kaufman is the trustee of and a participant in the Plan. He also maintained separate individual accounts with Piper. In 1998, Kaufman signed an agreement with Piper which opened the Plan's investment. At the time the events occurred which gave rise to this lawsuit, only Kaufman and Nothstine were participants in the Plan.

¶6 Kaufman is a busy physician with limited time to deal with his investment accounts. O'Neill was aware of the demands on Kaufman's time, and Kaufman relied on O'Neill to communicate details about his investment accounts as needed. When Kaufman was presented with documents dealing with his individual accounts, he did not believe that those

3

accounts had anything to do with the management of the Plan. No one at Piper explained that by opening additional accounts, Kaufman could affect the rights of the Plan and its participants. Kaufman signed a PAT Plus Account Agreement for the Plan after he received it in the mail with a letter stating that Piper was eliminating the type of account the Plan had previously had in place. The letter recommended the PAT Plus Account format, and explained that if Kaufman did not sign the new agreement, the Plan would be reassigned to a fee-paying account format. Kaufman signed the PAT Plus Account Agreement without reading it, and without being informed of its arbitration provisions. The agreement contained a pre-dispute arbitration provision and a provision purporting to allow Piper to complete transactions within the client's account whenever Piper "deems it necessary for its protection." Piper has demanded arbitration of the disputes in the Plan's accounts pursuant to the arbitration provisions contained in the PAT Plus document.

¶7    These facts and the issues arising from them are substantially identical to those presented in *Willems v. U.S. Bancorp Piper Jaffray, Inc.*, 2005 MT 37, ¶ 22, 326 Mont. 103, ¶ 22, 107 P.3d 465, ¶ 22, in which we held that a clause in a PAT Plus Account Agreement granting Piper broad discretion over an investor's holdings creates a fiduciary duty. That clause, in addition to an arbitration clause, was included in the pre-filled forms which Nothstine signed in connection with her Roth IRA account, and Kaufman signed when Piper informed him that the Plan's account format was being discontinued. *Willems* further held that in light of the fiduciary duty, Piper was obligated to advise investors of the consequences

4

of the arbitration clause prior to the formation of the contract, and that because Piper did not, the arbitration clause was unenforceable. *Willems*, ¶¶ 25, 28.

¶8 We have determined to decide this case pursuant to our Order dated February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions.

¶9 We conclude that, in light of *Willems*, this case is clearly controlled by settled Montana law. Therefore, we affirm the District Court's conclusion that Piper owed a fiduciary duty to explain the arbitration provision to Nothstine and Kaufman, that it breached that duty, and therefore, the pre-dispute arbitration provisions are unenforceable.

/S/ PATRICIA O. COTTER

We Concur:

/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER