No. 04-455

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 282

NANCY ZIGRANG,

Plaintiff and Respondent,

v.

U.S. BANCORP PIPER JAFFRAY, INC., PIPER
JAFFRAY, INC., ROBERT ENGLISH and THOMAS
J. O'NEILL, and JOHN DOES I through X,

Defendants and Appellants.

APPEAL FROM:    District Court of the Second Judicial District,
                In and for the County of Silver Bow, Cause No. DV-02-77,
                The Honorable Kurt Krueger, Judge presiding.

COUNSEL OF RECORD:

        For Appellants U.S. Bancorp Piper Jaffray and Robert English:

              Stanley T. Kaleczyc, Brand G. Boyar, Browning Kaleczyc Berry & Hoven,
              P.C., Helena, Montana

              John S. Lutz, Fairfield and Woods, P.C., Denver, Colorado

        For Respondent:

              Tina L. Morin, Poor Roth & Robinson, P.C., Butte, Montana

                                    Submitted on Briefs:  April 20, 2005

                                          Decided:  November 8, 2005

Filed:

        _____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Appellant U.S. Bancorp Piper Jaffray, Inc. (Piper), appeals from the decision of the Second Judicial District Court, Silver Bow County, denying its motion to compel arbitration of claims asserted by Respondent Nancy Zigrang (Zigrang).  We remand for further proceedings.

¶2      We address whether the District Court properly ruled that the arbitration clause contained in the SEP-IRA agreement signed by Zigrang is enforceable as to the claims against Piper and, therefore, whether Zigrang must arbitrate her dispute.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      This case represents one of twenty-three lawsuits filed by individual investors against Piper, Robert English (English), and Tom O'Neill (O'Neill) involving the alleged mismanagement of accounts in Piper's corporate offices in Butte.  *See Willems v. U.S. Bancorp Piper Jaffray, Inc*., 2005 MT 37, 326 Mont. 103, 107 P.3d 465.  This particular action concerns an investment agreement Zigrang entered with Piper that contained an arbitration provision.

¶4      Zigrang is a 68-year-old woman with a high school education who has worked various jobs in and around Butte for the better part of five decades.  Zigrang retained O'Neill in 1993 to open a simplified employee pension individual retirement account (SEP-IRA) for the purpose of investing a little money for retirement.  The SEP-IRA agreement contained an arbitration provision.

¶5      Zigrang signed the agreement after a brief discussion with O'Neill regarding the

2

general maintenance of the account. O'Neill did not advise Zigrang that the agreement contained a provision to arbitrate any dispute that could arise between Piper and her. O'Neill never informed Zigrang that she could "opt out" of any of the provisions contained within the agreement, including the arbitration provision.

¶6     Zigrang filed a complaint on April 5, 2002, after learning that O'Neill frequently had traded securities in her account without obtaining her approval. Zigrang alleged that O'Neill had purchased and sold securities in rapid succession in order to generate unnecessary and excessive costs and commissions against Zigrang's account. Piper filed a motion to compel arbitration on August 14, 2002, based upon the provision of the SEP-IRA agreement requiring arbitration of disputes in Zigrang's account.

¶7     A panel of three district court judges sat *en banc* to hear evidence common to all twenty-three cases arising from O'Neill's alleged misconduct on July 9, August 12, and September 3, 2003. The District Court denied Piper's motion to compel arbitration and stay proceedings on April 7, 2004. The order issued by the District Court, however, includes common findings of fact that do not apply to Zigrang. The order mistakenly states that Zigrang held a PAT Plus agreement with Piper and fails to mention the SEP-IRA that Zigrang actually held. Piper's PAT Plus agreement grants O'Neill some discretion to trade securities. The terms of the SEP-IRA agreement signed by Zigrang, however, specifically prohibit O'Neill from having any discretion at all. This appeal follows.

## STANDARD OF REVIEW

¶8     We review a district court's order refusing to compel arbitration *de novo* to determine

3

whether its conclusions of law prove correct. *Iwen v. U.S. West Direct*, 1999 MT 63, ¶ 17, 293 Mont. 512, ¶ 17, 977 P.2d 989, ¶ 17. When a district court compels arbitration, or refuses to compel arbitration, the threshold inquiry remains whether the parties agreed to arbitrate. *Solle v. Western State Ins. Agency, Inc.*, 2000 MT 96, ¶ 22, 299 Mont. 237, ¶ 22, 999 P.2d 328, ¶ 22.

## DISCUSSION

¶9     The facts and issues arising in this case bear substantial similarity to those presented in *Willems*. We held in *Willems* that a clause in a PAT Plus account agreement granting Piper broad discretion over an investor's holdings creates a fiduciary duty. *Willems*, ¶ 22. This fiduciary duty obligated Piper to advise the investor of the consequences of an arbitration clause before the formation of the contract. *Willems*, ¶ 25. Piper's failure to so advise the investor rendered the arbitration clause unenforceable. *Willems*, ¶ 28. The differences between the PAT Plus account agreement in *Willems* and the SEP-IRA agreement here require us, however, to evaluate further the enforceability of the arbitration agreement at issue.

### The Federal Arbitration Act

¶10    The Federal Arbitration Act (FAA) provides that arbitration provisions found in contracts affecting interstate commerce are valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The sale of securities through a public stock exchange falls within the ambit of the Act. *Passage v. Prudential-Bache Securities, Inc.* (1986), 223 Mont. 60, 65, 727 P.2d 1298, 1301. The FAA

4

applies to disputes under state court jurisdiction. *See Southland Corp. v. Keating* (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1.

¶11 Piper contends that the District Court thwarted the FAA's intent and purpose by ruling the arbitration provision unenforceable in light of the fact that the act represents a federal and state policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon* (1987), 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185; *Chor v. Piper, Jaffray & Hopwood, Inc.* (1993), 261 Mont. 143, 862 P.2d 26. The intent of the FAA, however, does not include thwarting applicable state contract law. State law applies "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas* (1987), 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 2527 n.9, 96 L.Ed.2d 426. Thus, generally applicable contract formation defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA. *Doctor's Associates, Inc. v. Casarotto* (1996), 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902; *Iwen*, ¶ 26. States may not craft special rules, however, that apply only for the purpose of defeating arbitration. *Iwen*, ¶ 26.

Contracts of Adhesion

¶12 We first must analyze the nature of the agreement between Zigrang and Piper before we can evaluate the enforceability of the arbitration provision. This Court has recognized that brokerage agreements may represent contracts of adhesion. *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 27, 310 Mont. 123, ¶ 27, 54 P.3d 1, ¶ 27. The Court in *Willems* did not need to reach the issue of whether the PAT Plus account agreement constitutes a contract

of adhesion in light of its holding that the discretionary nature of the account imposed a fiduciary duty on Piper. *Willems*, ¶ 9. This fiduciary duty obligated Piper to advise the investor of the consequences of the arbitration provision. *Willems*, ¶ 25. The SEP-IRA agreement at issue here granted Piper no similar discretionary authority on its face.

¶13 The availability of Zigrang's potential contract formation defenses hinges on our determination of whether the SEP-IRA agreement, absent discretionary authority to Piper, constitutes a contract of adhesion. Generally applicable contract law states that an adhesion contract will not be enforced against the weaker party if it is (1) not within their reasonable expectations, or (2) within their reasonable expectations, but, when considered in its context, proves unduly oppressive, unconscionable or against public policy. *Iwen*, ¶ 27.

¶14 Contracts of adhesion arise when a party possessing superior bargaining power presents a standardized form of agreement to a party whose choice remains either to accept or reject the contract without the opportunity to negotiate its terms. *Kloss,* ¶ 24. We have noted that investors face the possibility of being excluded from the securities market unless they accept a contract containing an arbitration provision. *Kloss*, ¶ 27. In *Kloss* we concluded that a standardized investment form, drafted by the broker and presented to the investor with no opportunity to negotiate the terms, constituted a contract of adhesion that excluded the investor from the securities market unless she accepted the agreement to arbitrate. *Kloss,* ¶ 27.

¶15 We agree with the District Court that Piper's SEP-IRA agreement represents a contract of adhesion. O'Neill provided Zigrang with a standardized form agreement, in this

6

case the SEP-IRA, prepared by Piper, on a "take it or leave it" basis. Zigrang, an elderly woman with no experience with investment services, had no bargaining power or opportunity to negotiate the terms of the contract if she chose to invest. Zigrang would have been excluded from the securities market if she did not accept the agreement to arbitrate. *See Kloss*, ¶ 27.

¶16    Piper contends that its investment agreements do not represent adhesion contracts because it maintains a policy allowing clients to "opt-out" of any offending provision. The District Court found, however, that Piper's alleged "opt-out policy" merely consisted of miscellaneous memoranda containing anecdotes or account summaries, many pages of which fail to mention arbitration. English, the branch manager of Piper, had not heard of the alleged policy. No one had ever brought him an account where an investor had attempted to strike a provision. In fact, to the best of his knowledge, the alleged policy cannot be found in the office's procedural manual and Piper does not train account executives to discuss the "opt-out" policy with clients.

¶17    The fact that the SEP-IRA agreement in this case represents a contract of adhesion, with nothing more, does not constitute a sufficient basis for invalidating the agreement. The adhesive nature of a contract only supports other contract formation defenses. *Iwen*, ¶ 28. We turn then to potential contract formation defenses asserted by Zigrang, including reasonable expectations and unconscionability.

¶18    This Court will not enforce the arbitration provision in a contract of adhesion if it is (1) not within Zigrang's reasonable expectations or (2) within her reasonable expectations,

but, when considered in its context, proves unduly oppressive, unconscionable or against public policy. *Passage,* 223 Mont. at 66, 727 P.2d at 1302. Zigrang also contends that she did not voluntarily, knowingly, and intelligently waive her constitutional right to a jury trial.

Contract Formation Defenses

¶19 We cannot complete our examination of Zigrang's contract formation defenses, however, because the District Court's order relies on a mistaken finding of fact. The order states that Zigrang held a PAT Plus agreement with Piper, rather than the SEP-IRA that Zigrang actually held. Thus, we must remand to the District Court for further findings of fact relating to the SEP-IRA investment agreement concerning potential contract formation defenses raised by Zigrang, including unconscionability, waiver, and reasonable expectations. We provide the following guidance to the District Court on remand as it attempts to analyze Zigrang's potential contract formation defenses. Her reasonable expectations likely will influence the outcome of this analysis. *See Transamerica Ins. Co. v. Royle* (1983), 202 Mont. 173, 180-81, 656 P.2d 820, 824.

¶20 The inquiry into an investor's reasonable expectations in an adhesion contract consists only of an analysis of the investor's objectively reasonable expectations regarding the investment agreement. This Court considers objectively reasonable expectations from the investor's perspective. *See Iwen,* ¶ 29; *Transamerica*, 202 Mont. at 180-81, 656 P.2d at 824. Thus, the terms of the investment agreement will be construed as laymen would understand it and not according to the interpretation of sophisticated stockbrokers. An investor's objectively reasonable expectations should be honored even if a painstaking study of the

8

agreement would negate those expectations. *See Transamerica*, 202 Mont. at 180-81, 656 P.2d at 824. Zigrang's objectively reasonable expectations, therefore, may negate the arbitration provision of an investment agreement in the same manner that any contract may be negated by this state law defense. *Casarotto,* 517 U.S. at 687.

¶21 Regardless of the type of investment agreement, Piper contends that the conspicuous presence of the arbitration provision in the investment agreement, with nothing more, proves sufficient to demonstrate objectively reasonable expectations. This Court in *Transamerica* held invalid a provision included in an insurance policy, however, because it failed to honor the policy holder's reasonable expectations. *Transamerica*, 202 Mont. at 180, 656 P.2d at 824.

¶22 The issue in *Transamerica* concerned an insurance company's obligation to defend or provide coverage for parents who were sued by their daughter who was injured in an accident in which the mother was the driver. *Transamerica*, 202 Mont. at 174, 656 P.2d at 821. The insurance policy contained a "household exclusion clause" that excluded coverage for injuries to any person related to the insured who resided in the same household. *Transamerica,* 202 Mont. at 174, 656 P.2d at 821. The fact that the policy represented an adhesion contract justified the Court's decision to consider reasonableness from the perspective of the policy holder. *Transamerica*, 202 Mont. at 180-81, 656 P.2d at 824. This Court held that the "household exclusion clause" failed to meet the reasonable expectations of the purchaser of the policy. *Transamerica,* 202 Mont. at 180, 656 P.2d at 824.

¶23 The fact that Zigrang's investment agreement constitutes a contract of adhesion

9

likewise supports consideration of reasonableness from her perspective. Thus, the mere presence of an arbitration provision in an investment agreement, though conspicuous, does not bring the provision within the reasonable expectations of an investor in every instance.

¶24 In fact, our review of the SEP-IRA agreement reveals the presence of other similarly conspicuous provisions not addressed by the District Court and apparently not raised by the parties. For example, a clause directly above the arbitration provision in the SEP-IRA agreement states: "I understand that I have the full responsibility for directing the investment of my account and that no transactions will occur in my account unless I (or another authorized person) so direct." The SEP-IRA agreement also contains a letter from the Internal Revenue Service that authorizes Piper to act as the custodian or passive trustee only in accordance with federal income tax regulations. *See* 26 C.F.R. § 1.408-2(e) (2005). Federal regulations permit Piper only to acquire and hold particular investments specified by Zigrang. Piper cannot act as the trustee of Zigrang's SEP-IRA account if the investment agreement grants them any discretion to direct investment within the account. *See* 26 C.F.R. § 1.408-2(e)(6)(i)(A)-(B) (2005).

¶25 The District Court must assess Zigrang's reasonable expectations in light of the entire SEP-IRA agreement. We remand to the District Court for findings of fact concerning the SEP-IRA account Zigrang actually held with Piper. The District Court must evaluate Zigrang's contract formation defenses, including reasonable expectations, unconscionability, and waiver of jury trial, as they relate to the terms of the SEP-IRA agreement.

¶26 Remanded.

/S/ BRIAN MORRIS


We Concur:

/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON