

DA 09-0394

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 28

SHIRLEY RIEHL, Personal Representative of
the ESTATE OF SHIRLEY ANN YANUSKI,

        Plaintiff and Appellee,

    v.

CAMBRIDGE COURT GF, LLC; SUNSET
MANAGEMENT, INC; and WENDY SMITH,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Eighth Judicial District,
                      In and For the County of Cascade, Cause No. DDV 2008-913
                      Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                J. Daniel Hoven, Carlo Canty, Chad Robert Vanisko, Browning, Kaleczyc,
                Berry & Hoven, P.C., Helena, Montana

        For Appellee:

                Stephanie Oblander, Smith, Oblander & Mora, P.C., Great Falls, Montana

                      Submitted on Briefs:  December 10, 2009

                                      Decided:  February 9, 2010

Filed:

                     _____
                                  Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Appellants Cambridge Court GF, LLC, Sunwest Management, Inc., and Wendy Smith (collectively "Cambridge Court"), appeal from a decision of the Eighth Judicial District Court denying Cambridge Court's motion to compel arbitration based on an arbitration provision in a contract between Cambridge Court and Appellee Shirley Riehl (Riehl), personal representative of the Estate of Shirley Ann Yanuski (Yanuski). The District Court further granted Riehl's motion for summary judgment and concluded that the arbitration provision was invalid and unenforceable. For the reasons set forth below, we affirm the District Court.

## BACKGROUND

¶2     In 2005, Shirley Yanuski was suffering from a form of dementia which significantly impaired her ability to care for herself and competently manage her own affairs. Her daughter, Riehl, became Yanuski's personal representative. In September 2007, Riehl moved her mother into an establishment in Great Falls, Montana, known as "Murphy's Elderly Guesthouse" (Guesthouse). Ultimately, Yanuski was unable to reside there because the Guesthouse could not provide for her special needs.

¶3     Riehl and her sister looked into other placement options for their mother in Great Falls which would be able to provide the specialized assisted living care which she required, including a facility known as the "Beehive." They ultimately determined that Cambridge Court would best serve their mother, and moved her into the Cambridge Court Memory Care Unit on or about September 25, 2007. Yanuski was transferred from the Guesthouse directly to the Cambridge Court facility. According to Riehl, Yanuski

2

did not want to move to Cambridge Court and objected to her placement there. At the time Yanuski was transferred, Riehl did not execute an admission agreement with Cambridge Court.[1]

¶4 Shannon Freeman (Freeman) was the interim administrator for Cambridge Court at the time. Approximately 3 days after Yanuski was admitted, Freeman met with Riehl to execute a care and admission agreement on behalf of Yanuski. The meeting lasted approximately 20 to 30 minutes. At that time, Freeman and Riehl discussed the costs of placement at Cambridge Court's facility. Freeman also went over the terms of a typewritten, 13-page standard contract entitled "Memory Care Admission Agreement" (Agreement), which was customarily used by Cambridge Court for admission into the Memory Care Unit.

¶5 Several portions of the Agreement are relevant to the instant appeal. For instance, the Agreement contains the following two provisions:

> [Section] 6.12 <u>Legal rights</u>. Nothing in this agreement shall construe any limit of Resident's or Owner's inalienable legal rights.

> .  .  .

> [Section] 8.9 <u>Governing law</u>. The laws of the State of Oregon, subject to Montana law regarding a licensed Assisted Living Facility, and the Federal Arbitration Act regarding dispute resolution, govern this agreement.

¶6 Immediately following this provision is Section 8.10, entitled "**<u>Dispute Resolution</u>**." Section 8.10 is 6 paragraphs in length and, unlike the other provisions of

---

[1] Riehl notes that Admin. R. M. 37.106.2823 required Cambridge Court to provide the care plan and admission agreement prior to Yanuski's admission to the Memory Care Unit.

the Agreement, is entirely in bold. This provision explicitly states that the parties to the Agreement will resolve "**any legal dispute, controversy, demand or claim . . . arising out of, or relating to**" the Agreement through "**<u>Binding Arbitration</u>**." The phrase "binding arbitration" is itself bolded and underlined so as to stand out from the rest of the text. Furthermore, the fourth paragraph of Section 8.10 states that the parties to the Agreement "**understand and acknowledge that, by entering into this binding arbitration agreement, they are giving up and waiving their right to have claims decided in a court of law before a judge and a jury.**"

¶7 At the hearing in the District Court, Freeman testified about her discussion of the terms of the Agreement with Riehl. Freeman testified that she did not specifically go over every provision of the Agreement with Riehl. Freeman generally advised Riehl that the Agreement contained a binding arbitration provision to resolve disputes arising from the Agreement. During direct examination, Freeman testified as follows concerning her routine practice in explaining Section 8.10 to a prospective resident:

> Q. You advised [a prospective resident], as your routine practice, you paraphrased what was in that paragraph. If I was a prospective resident or a legal representative, what would it have been your practice to tell them about that particular section regarding arbitration?
> A. Typically, when I did approach that section, I would let the family members and the prospective resident know that if anything needed to be decided legally, at some point in time, that the company had a section on binding arbitration. And that that's the way that they would prefer to see things go forth, if anything needed to be decided.

¶8 On cross-examination, Riehl's counsel followed up with Freeman on this portion of her testimony.

4

Q.    [Y]ou said something on direct that I wanted to follow up briefly and then this will be the end, I'll finish.
I believe you had indicated that in the section about arbitration in [the Agreement], the Arbitration Provision 8.10, that you explained it [to] the residents that arbitration is how the company would prefer to see things go if there was a dispute down the road; was that you testimony?
A.    Yes.
Q.    So, you wouldn't even explain it that the resident had no choice that arbitration was going to be mandatory.  You explained that the company's preference was that arbitration is how they wanted to see things handled?
A.    Yes, that is how I was under the impression, when I had started wanting to go over this, that that's how it was.
Q.    So, in none of the meetings, and specifically, certainly not with Ms. Riehl, did you explain to the resident that, in signing the admission agreement, the resident was waiving their constitutional right to a jury trial; you didn't explain that to them?
A.    No, I did not because I was not aware of that at the time.
THE COURT:  Because why?
THE WITNESS:  I was not aware of that.

¶9    On February 13, 2008, Yanuski died at Cambridge Court's facility.  Riehl alleged that Yanuski's death was due acts of negligence by Cambridge Court.  On July 18, 2008, Riehl filed a negligence suit against the defendants.  Riehl also specifically sought a declaratory judgment that the dispute resolution provision of the Agreement was unenforceable and invalid.

¶10    Cambridge Court subsequently filed a motion to compel arbitration. Riehl resisted the motion to compel and sought summary judgment on her declaratory judgment action regarding the validity and enforceability of the arbitration provision.  A hearing on the motion to compel and motion for summary judgment was held before the District Court on May 26, 2009.[2]  At the conclusion of the hearing, the District Court denied Cambridge

---

[2]  Cambridge Court also filed a motion to stay the District Court proceedings based on pending actions against Sunwest, Inc., in federal court in Oregon.  Furthermore, Riehl

Court's motion to compel and granted Riehl's summary judgment motion from the bench, holding that the arbitration provision was invalid and unenforceable. In its oral findings, the District Court determined that Freeman did not discuss with Riehl the fact that Section 8.10 constituted a waiver of the right to a jury trial, and did not herself understand that it was such a waiver. Instead, Freeman thought that arbitration was simply a preferred method of dispute resolution. The District Court also found that the arbitration provision was not itself subject to negotiation, and was presented to Riehl as part of a "take it or leave it" contract.

¶11 In its conclusions of law, the District Court considered whether the arbitration provision was enforceable under *Kortum-Managhan v. Herbergers NBGL*, 2009 MT 79, 349 Mont. 475, 204 P.3d 693. The District Court noted that the threshold inquiry in considering a motion to compel arbitration is whether the parties agreed to arbitrate, and that the existence of an agreement to arbitrate is analyzed in accordance with principles of contract formation under Montana law. *Kortum-Managhan*, ¶¶ 15-17. The District Court noted that a valid contract must contain the following four elements: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. *Kortum-Managhan*, ¶ 18. In this regard, the District Court observed that in order for consent to be established under Montana law, there must be "mutual assent"

---

sought summary judgment on a declaratory judgment count in her complaint that the choice of law provision was unenforceable. The District Court entertained argument on these pending motions at the May 26 hearing as well. The District Court denied the motion to stay and granted Riehl's motion for summary judgment on the choice of law provision. These rulings have not been appealed and will not be discussed in this Opinion.

6

or a "meeting of the minds" on all essential terms of the contract, and that there must be a valid offer and acceptance in order to effectuate a contract. *See Kortum-Managhan*, ¶ 18 (quoting *Keesun Partners v. Ferdig Oil Co., Inc.*, 249 Mont. 331, 337, 816 P.2d 417, 421 (1991)).

¶12 The District Court further observed that a contract of adhesion will not be enforced against a weaker party if the terms of the contract are not within the reasonable expectations of the party, or they are within the reasonable expectations of the party, but either unduly oppressive, unconscionable, or against public policy. *See Kortum-Managhan*, ¶ 23 (citing *Zigrang v. U.S. Bancorp Piper Jaffray, Inc.*, 2005 MT 282, ¶ 13, 329 Mont. 239, 123 P.3d 237). A contract of adhesion is said to arise "when a party possessing superior bargaining power presents a standardized form of agreement to a party whose choice remains either to accept or reject the contract without the opportunity to negotiate its terms." *Zigrang*, ¶ 14.

¶13 Additionally, the District Court noted that in order for a party to consent to arbitration, she must knowingly, intelligently, and voluntarily waive her fundamental rights of access to the courts and a jury trial under the Montana Constitution. *See Kortum-Managhan*, ¶ 26 (citing *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶¶ 48 n.1, 64, 310 Mont. 123, 54 P.3d 1, *cert denied*, 538 U.S. 956, 123 S. Ct. 1633 (2003) (Nelson, Cotter, Leaphart & Trieweiler, J.J., specially concurring)). The District Court considered whether Riehl had executed a valid waiver of these rights under the 10-factor test discussed in *Kortum-Managhan*, and determined that the factors weighed against the finding of a valid waiver. *See Kortum-Managhan*, ¶ 27.

7

¶14 Based on this analysis, the District Court drew two dispositive conclusions. First, it concluded that the Agreement was a contract of adhesion, and that the binding arbitration provision was beyond the objective and subjective expectations of Riehl. Consequently, the District Court determined the arbitration provision was unconscionable and unenforceable. Second, the District Court independently concluded that Riehl did not knowingly, intelligently, and voluntarily waive her fundamental rights to access to the courts and a jury trial. Because there was not a valid waiver of these rights, the District Court concluded there was no mutual consent between the parties to agree to binding arbitration and the arbitration provision was not valid and enforceable as a matter of contract law. The District Court summarized its pronouncement from the bench in a written order date June 3, 2009.

¶15 Cambridge Court now appeals from the decision of the District Court. We state the issue presented by Cambridge Court as follows:

¶16 *Did the District Court err in concluding that the arbitration provision in this case was invalid and unenforceable?*

### STANDARD OF REVIEW

¶17 We review de novo a district court's disposition of a motion to compel arbitration. *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 5, 353 Mont. 6, 218 P.3d 486; *Howard Elec. and Mechanical Co., Inc. v. Frank Briscoe Co., Inc.*, 754 F.2d 847, 849 (9th Cir. 1985). We also review de novo a district court's decision granting summary judgment. *Rich v. Ellingson*, 2007 MT 346, ¶ 12, 340 Mont. 285, 174 P.3d 491. A district court's

8

conclusions of law in both of these contexts are reviewed for correctness. *Martz v. Beneficial Mont., Inc.*, 2006 MT 94, ¶ 10, 332 Mont. 93, 135 P.3d 790; *Rich*, ¶ 12.

**DISCUSSION**

¶18 Cambridge Court claims the District Court erred in its decision. First, Cambridge Court argues the arbitration provision in Section 8.10 was conspicuous, clear, unambiguous, and agreed to by both parties. In this connection, Cambridge Court asserts the waiver provision in Section 8.10 was not in conflict with Section 6.12. *See Opinion*, ¶¶ 5-6. Second, Cambridge Court asserts that the Agreement was not a contract of adhesion. Cambridge Court argues that Riehl was not forced to execute the Agreement with Cambridge Court because she could have sought admission at other facilities and had alternatives other than Cambridge Court. Further, Cambridge Court asserts that Riehl cannot claim she was "compelled" to sign the Agreement in order to avoid moving Yanuski a second time, since she had an opportunity to inquire about the terms of the Agreement prior to moving Yanuski into Cambridge Court. Cambridge Court acknowledges that Freeman allowed Yanuski to move in before the appropriate paper work was formalized, but claims this was done in the immediate and best interests of Yanuski in order to place her immediately. Furthermore, Cambridge Court notes that Freeman testified it was her policy to give potential residents time to review the Agreement.

¶19 Regarding the "negotiability" of the Agreement, Cambridge Court argues that Section 8.2 of the Agreement outlines the procedures to be followed in order to amend its

terms.[3] Moreover, Cambridge Court asserts there was no evidence presented that Riehl ever requested negotiation of any of the terms of the Agreement. For these reasons, Cambridge Court asserts that the District Court erred in concluding the Agreement was a contract of adhesion under *Kortum-Managhan*.

¶20 Additionally, Cambridge Court argues that the Agreement was enforceable against Riehl because it was within her reasonable expectations and was not unduly oppressive, unconscionable, or against public policy. Cambridge Court claims that Freeman's explanation to Riehl that it would "prefer" to use arbitration accurately informed her expectations. Cambridge Court also argues that because Riehl was acting as Yanuski's personal representative, she had a heightened responsibility to be fully informed of the provisions and consequences of the Agreement. Because she reviewed the Agreement, was aware of its contents, and the arbitration provision was unambiguous, Cambridge Court argues it was within her reasonable expectations. Furthermore, Cambridge Court claims the arbitration provision is not unconscionable or against public policy, insofar as the terms of the Agreement are not unreasonably favorable to Cambridge Court, both parties share mutuality of obligation under its terms, and Riehl had meaningful choices and options available to her before deciding to sign it.

---

[3] Section 8.2 reads as follows: "<u>Amendments</u>. This Agreement constitutes the entire agreement between Owner and Resident and no amendment, alteration, modification or addition to this Agreement shall be valid or enforceable unless all parties express consent in writing and sign it. However, Owner may change, without such written, signed expression, and without prior notice, the Resident Handbook, House Rules, or its policies and procedures, so long as the changes would not cause a material breach to this Agreement."

¶21 Finally, Cambridge Court argues that the District Court erred in concluding that Riehl did not knowingly, voluntarily, and intelligently waive her rights to a jury trial and access to the courts when she signed the Agreement. Cambridge Court disputes the District Court's analysis under the 10-factor test as recently described in *Kortum-Managhan*.

¶22 Riehl urges us to affirm. First, Riehl argues that the Agreement was a contract of adhesion. Riehl claims the facts show that Freeman required her to sign the Agreement, and did not actually engage in negotiations with her regarding its contents. Riehl argues the Agreement was presented on a "take it or leave it" basis, including the arbitration provision, and that the language in Section 8.2 only contemplates modification of the Agreement after it has been executed. Riehl disputes the contention that she had the opportunity to negotiate its terms, especially given the fact that Yanuski was already at Cambridge Court and it would have been very difficult to move her.

¶23 Second, Riehl claims that arbitration was simply not within her reasonable expectations, and that she cannot be compelled to arbitrate. Riehl notes that Freeman herself testified that she did not believe the binding arbitration provision would waive Riehl's rights to a jury trial and access to the courts. Riehl argues that if this was not within Freeman's reasonable expectations, it could not be within her reasonable expectations either. Riehl disputes the argument that she was somehow under a greater burden to understand the contents of the Agreement, simply because she was acting as Yanuski's personal representative. Riehl also argues the Agreement is unconscionable and against public policy on the grounds that it lacks mutuality of obligation between the

parties. Riehl also argues the District Court did not err in its analysis of whether she knowingly, intelligently, and voluntarily waived her rights to access to the courts and a jury trial under the 10-factor test in *Kortum-Managhan*.

¶24 Finally, Riehl requests that the arbitration provision in Section 8.10 be stricken from the Agreement due to the conflicts and ambiguities caused by it in relation to Sections 6.12 and 8.9. Riehl argues that when read together, the "Legal Rights" provision (Section 6.12), the "Governing Law" provision (Section 8.9), and the arbitration provision (Section 8.10), render the Agreement susceptible to at least two reasonable but conflicting interpretations. On the one hand, the "Legal Rights" provision could indicate that the signing party is not waiving any of her rights; on the other hand, the arbitration provision indicates that the rights to a jury trial and access to the courts are being waived. The claimed ambiguity is a function of the fact that Section 8.9 calls for the Agreement to be interpreted according to Oregon law, but that the "inalienable legal rights" referred to in Section 6.12, are not defined under the laws of Oregon or Montana. Thus, Riehl argues, Section 6.12 does not define "inalienable legal rights" clearly, creating confusion as to the applicability and scope of a waiver of the fundamental rights to a jury trial and access to the courts as set forth in the arbitration provision. Riehl also seeks attorney fees under M. R. App. 19(5), for what she terms a "frivolous" appeal.

¶25 We review de novo the District Court's disposition of the motion to compel, as well as the motion for summary judgment. *Woodruff*, ¶ 5; *Rich*, ¶ 12. In *Kortum-Managhan*, we noted that the threshold inquiry in this context is whether the parties have

12

agreed to arbitrate. *Kortum-Managhan*, ¶ 15 (citing *Zigrang*, ¶ 8). The existence of such an agreement is a matter of Montana contract law. *Kortum-Managhan*, ¶ 17.

¶26 The construction and interpretation of a contract, including the existence of any ambiguities in the provisions of a contract, is a question of law. *Performance Machinery Co., Inc. v. Yellowstone Mountain Club, LLC*, 2007 MT 250, ¶ 39, 339 Mont. 259, 169 P.3d 394 (citing *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192; *Mary J. Baker Revoc. Trust v. Cenex Harvest*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851). " 'An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations.' " *West v. Club at Spanish Peaks, L.L.C.*, 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228 (quoting *Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 17, 330 Mont. 282, 127 P.3d 436). "The existence of an ambiguity must be determined on an objective basis, and an ambiguity exists only if the language is susceptible to at least two reasonable but conflicting meanings." *Performance Machinery*, ¶ 39. If the court determines a contract is ambiguous, it is interpreted "most strongly" against the party who drafted it. *West*, ¶ 53 (citing *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 24, 306 Mont. 321, 34 P.3d 87); *see also Performance Machinery*, ¶ 39 (citing *Ophus*, ¶ 31). Furthermore, " 'when a contract term is ambiguous, interpretation of the term involves determining a question of fact regarding the intent of the parties to the contract.' " *West*, ¶ 53 (citing *Wurl*, ¶ 17).

¶27 We agree with Riehl that the Agreement, as a whole, is ambiguous regarding the scope and applicability of the arbitration provision. Section 6.12, entitled "Legal rights," states that "[n]othing in this agreement shall construe any limit of Resident's or Owner's

13

inalienable legal rights." Neither the Agreement itself, nor the laws of Montana or Oregon, specifically define the term "inalienable legal rights." However, Section 8.10 states that the parties to the Agreement "**understand and acknowledge that, by entering into this binding arbitration agreement, they are giving up and waiving their right to have claims decided in a court of law before a judge and a jury.**" The Agreement itself never explains how these two provisions are to be reconciled. Section 8.10 informs the parties that they are "waiving" their legal rights to access to the courts. Section 6.12 informs the resident that "nothing in this agreement" limits any of their "inalienable legal rights."

¶28 We conclude that the Agreement, when considered as a whole, is ambiguous as to whether Riehl actually agreed to waive her rights to access to the courts and a trial by jury when she entered into the Agreement. While the District Court determined that the express language of the waiver clause was not, in and of itself, internally ambiguous or misleading, it did find that the wavier in Section 8.10 could be misleading or ambiguous given that Section 6.12 states that nothing in the Agreement shall construe any limits on the resident's "inalienable legal rights." However, we review the District Court's decision in this case de novo are not bound by its reasoning or interpretation.

¶29 Accordingly, we consider whether the parties actually intended to agree to the binding arbitration provision as a question of fact. *West*, ¶ 53. As noted above, *see Opinion*, ¶¶ 7-8, Freeman specifically testified that she did not know or believe that the Agreement called for binding arbitration. Instead, Freeman thought that Cambridge Court merely "preferred" arbitration. Thus, as a factual question, Freeman, on behalf of

14

Cambridge Court, did not intend to enter into a binding arbitration agreement with Riehl.[4] Similarly, Riehl stated to the District Court that she had "no idea" that the Agreement required her to waive her rights to a jury trial. Thus, we hold there was no "mutual intent," or "meeting of the minds," between the parties regarding the binding arbitration provision in this case.

¶30 As Riehl notes, Section 8.4 of the Agreement contains a severability clause which specifically states that "[i]f any term or provision of this Agreement proves to be invalid, illegal or unenforceable, the remainder of this Agreement shall remain in full force and effect." We conclude the arbitration provision, Section 8.10, is unenforceable against Riehl in this case.

¶31 Since we hold that the arbitration provision is unenforceable against Riehl due to ambiguities in the Agreement and a lack of mutual consent between the parties to agree to arbitration, it is not necessary for this Court to decide whether the Agreement was a contract of adhesion, or whether the arbitration provision was within the reasonable expectations of Riehl, or unconscionable. Nor must this Court consider whether Riehl waived her rights to access to the courts and a trial by jury, because in any event the arbitration provision is unenforceable against Riehl. Likewise, our decision disposes of Cambridge Court's argument under § 27-5-114(2), MCA.

**CONCLUSION**

---

[4] We note that there is no genuine issue of material fact regarding Freeman's understanding of the arbitration provision, although Cambridge Court does dispute the legal significance of Freeman's understanding as it pertains to the question of whether or not the arbitration provision is enforceable against Riehl.

15

¶32    We affirm the District Court's denial of Cambridge Court's motion to compel arbitration and grant of summary judgment to Riehl.  We deny Riehl's request for attorney fees for work done on appeal.  Although we have denied Cambridge Court's efforts to reverse the District Court, its appeal is meritorious and adequately argued.

¶33    Affirmed.


                                                        /S/ JAMES C. NELSON



We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS